AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

❏ Original               ❏



CLERK'S OFFICE
A TRUE COPY
Apr 30, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )      Case No. **25-M-411 (SCD)**
the property at N9563 Friendship Drive, Apt. #9, )
Kaukauna, WI 54130 (TARGET PROPERTY or )
PREMISES) further described in Attachment A )

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure
of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____5-14-25_____ *(not to exceed 14 days)*
☒ in the daytime 6:00 a.m. to 10:00 p.m.      ❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the
person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to _____Hon. Stephen C. Dries_____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*     ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:      _____4-30-25. 10:50 am_____

_____
*Judge's signature*

City and state:      _____Milwaukee, Wisconsin_____      Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

<u>**ATTACHMENT A**</u>

**Property to Be Searched**

The property to be searched is **N9563 Friendship Drive, Apt. #9, Kaukauna, WI 54130** (TARGET PROPERTY or PREMISES), to include the mailbox and all associated storage lockers, closets, and/or areas associated with the PREMISES within the curtilage of the TARGET PROPERTY, and a Gray Hyundai Sante Fe vehicle, bearing Wisconsin license plate ASW6609.

The property at **N9563 Friendship Drive, Apt. #9, Kaukauna, WI 54130** is located west of Friendship Drive / State Highway 55 in Kaukauna, Wisconsin. The residence is described as a two-story, multi-unit apartment building with light colored brick and gray siding, and garages located on the South and North side of the building. The entrance to Apt. #9 is on the back side (Southeast corner) of the building, and is labeled with the number nine on the door. The garage entrance to Apt. #9 is located on the south side of the building.

 

## ATTACHMENT B

## ITEMS TO BE SEIZED:

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use, or which is or has been used as the means of committing a criminal offense, 18 U.S.C. § 2251(a), (c), and (e) – Sexual exploitation of children, and attempts and conspiracies to sexually exploit children; 18 U.S.C. §§ 2252(a)(1) & (b)(1) and 2252A(a)(1) & (b)(1) – Transportation and attempted transportation of child pornography; 18 U.S.C. §§ 2252(a)(2) & (b)(1) and 2252A(a)(2) & (b)(1) – Distribution and attempted distribution of child pornography; 18 U.S.C. §§ 2252(a)(2) & (b)(1) and 2252A(a)(2) & (b)(1) – Receipt and attempted receipt of child pornography; 18 U.S.C. §§ 2252(a)(4)(B) & (b)(2) and 2252A(a)(5)(B) & (b)(2) – Possession and attempted possession of child pornography; 18 U.S.C. §§ 2252(a)(4)(B) & (b)(2) and 2252A(a)(5)(B) & (b)(2) – Accessing and attempting to access material with the intent to view child pornography; and 18 U.S.C. § 2422(b) – Coercion and enticement and attempted coercion and enticement of a minor:

1. Computers or storage media used to commit the violations described above.

2. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

    A. Evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs,

registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

B.     Evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

C.     Evidence of the lack of such malicious software;

D.     Evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to the crime(s) under investigation and to the computer user;

E.     Evidence indicating the computer user's knowledge and/or intent as it relates to the crime(s) under investigation;

F.     Evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

G.     Evidence of programs (and associated data) that are designed to eliminate data from the COMPUTER;

H.     Evidence of the times the COMPUTER was used;

I.     Passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

J.     Documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

K.      Records of or information about Internet Protocol addresses used by the COMPUTER;

L.      Records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered in any Internet search engine, and records of user-typed web addresses; and

M.      Contextual information necessary to understand the evidence described in this attachment.

3.      Routers, modems, and network equipment used to connect computers to the Internet.

4.      Child pornography and child erotica.

5.      Records, information, and items relating to violations of the statutes described above including:

A.      Records, information, and items relating to the occupancy or ownership of the SUBJECT PREMISES, including utility and telephone bills, mail envelopes, or addressed correspondence;

B.      Records, information, and  items relating to the ownership or use of computer equipment found in the above residence, including sales receipts, bills for Internet access, and handwritten notes;

C.      Records and information relating to the identity or location of the persons suspected of violating the statutes described above;

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded, including external and internal hard drives, flash drives, thumb drives, micro-SD cards, macro-SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact discs, magnetic tapes, memory cards, memory chips, and other magnetic or optical media.

During the execution of the search of the premises described in Attachment A, law enforcement personnel are authorized to press the fingers (including thumbs) and hold up the device(s) to the face of individuals found at the premises to the Touch ID sensor of Android or Apple brand device(s) and the camera of the Apple brand devices, smartphones, or tablets, such as an iPhone or iPad, found at the premises for the purposes of attempting to unlock the device(s) via Touch ID and  Face ID in order to search the contents as authorized by this warrant.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin



CLERK'S OFFICE
A TRUE COPY
Apr 30, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

the property at N9563 Friendship Drive, Apt. #9, Kaukauna, WI 54130 (TARGET PROPERTY or PREMISES) further described in Attachment A

)
)
)
)
)
)

Case No. **25-M-411 (SCD)**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2251(a), (c), & (e); 2252(a)(1) & (b)(1) & 2252A(a)(1) & (b)(1); Et al. | Sexual exploitation of children, and attempts and conspiracies to sexually exploit children; Transportation and attempted transportation of child pornography; Et al. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

JULIUS KLEVINSKAS   Digitally signed by JULIUS KLEVINSKAS
Date: 2025.04.29 13:35:18 -05'00'

*Applicant's signature*

Julius Klevinkas, DHS Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date: ____ 4-30-25 ____

*Judge's signature*

City and state: Milwaukee, Wisconsin    Honorable Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

**<u>AFFIDAVIT IN SUPPORT OF</u>**

**<u>AN APPLICATION FOR A SEARCH WARRANT</u>**

I, Julius Klevinskas, being first duly sworn, hereby depose and state as follows:

**<u>INTRODUCTION AND AGENT BACKGROUND</u>**

1.      I make this affidavit in support of an application for a search warrant for the residence located at **N9563 Friendship Drive, Apt. #9, Kaukauna, WI 54130** (TARGET PROPERTY or PREMISES), which is further described in Attachment A, for the items described in Attachment B.

2.      I am a sworn law enforcement officer currently employed as a Special Agent with the Department of Homeland Security (DHS), Homeland Security Investigations (HSI) and have been so employed since approximately January 2023. I am currently assigned to the Chicago Field Division – Milwaukee Resident Office (RAC). Since becoming a Special Agent, I have received specialized training in various aspects of law enforcement and my responsibilities include conducting investigations of alleged criminal violations of federal statutes and laws. Prior to my tenure as a HSI Special Agent, I was a Diversion Investigator with the United States Department of Justice (DOJ), Drug Enforcement Administration (DEA), Milwaukee District Office, from approximately July 2019 to January 2023.

3.      The facts in this affidavit come from my personal observations, my training, and experience and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that evidence of violations of 18 U.S.C. § 2251(a), (c), and (e) – Sexual

exploitation of children, and attempts and conspiracies to sexually exploit children; 18 U.S.C. §§ 2252(a)(1) & (b)(1) and 2252A(a)(1) & (b)(1) – Transportation and attempted transportation of child pornography; 18 U.S.C. §§ 2252(a)(2) & (b)(1) and 2252A(a)(2) & (b)(1) – Distribution and attempted distribution of child pornography; 18 U.S.C. §§ 2252(a)(2) & (b)(1) and 2252A(a)(2) & (b)(1) – Receipt and attempted receipt of child pornography; 18 U.S.C. §§ 2252(a)(4)(B) & (b)(2) and 2252A(a)(5)(B) & (b)(2) – Possession and attempted possession of child pornography; 18 U.S.C. §§ 2252(a)(4)(B) & (b)(2) and 2252A(a)(5)(B) & (b)(2) – Accessing and attempting to access material with the intent to view child pornography; and 18 U.S.C. § 2422(b) – Coercion and enticement and attempted coercion and enticement of a minor, more particularly described in Attachment B, will be found at the TARGET PROPERTY.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## STATUTORY AUTHORITY

6.      As noted above, this investigation concerns alleged violations of the following:

a.      18 U.S.C. § 2251(a) and (e) prohibit any person from employing, using, persuading, inducing, enticing, or coercing any minor to engage in, or having a minor assist any other person to engage in, or transporting any minor in or affecting interstate or foreign commerce with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, if such person knows or has reason to

2

know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed; or if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer; or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed; or attempting or conspiring to do so.

b.     18 U.S.C. § 2251(c) and (e) prohibit any person from employing, using, persuading, inducing, enticing, or coercing any minor to engage in, or having a minor assist any other person to engage in, any sexually explicit conduct outside of the United States, its territories or possessions, for the purpose of producing any visual depiction of such conduct, if the person intends such visual depiction to be transported to the United States, its territories or possession, by any means, including by using any means or facility of interstate or foreign commerce or mail; or if the person transports such visual depiction to the United States, its territories or possessions, by any means, including by using any means or facility of interstate or foreign commerce or mail; or attempting or conspiring to do so.

c.     18 U.S.C. § 2252(a)(1) and (b)(1) prohibit any person from knowingly transporting or shipping, or attempting or conspiring to transport or ship, any visual depiction using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce, by any means, including by computer or mail, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

3

d. 18 U.S.C. § 2252(a)(2) and (b)(1) prohibit any person from knowingly receiving or distributing, or attempting or conspiring to receive or distribute, any visual depiction using any means or facility of interstate or foreign commerce, or that has been mailed or shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproducing any visual depiction for distribution using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce or through the mails, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

e. 18 U.S.C. § 2252(a)(4)(B) and (b)(2) prohibit any person from knowingly possessing or accessing with the intent to view, or attempting or conspiring to possess or access with the intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

f. 18 U.S.C. § 2252A(a)(1) and (b)(1) prohibit a person from knowingly mailing or transporting or shipping using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by

4

computer, any child pornography, as defined in 18 U.S.C. § 2256(8), or attempting or conspiring to do so.

g.       18 U.S.C. § 2252A(a)(2)(A) and (b)(1) prohibit a person from knowingly receiving or distributing, or attempting or conspiring to receive or distribute, any child pornography or any material that contains child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

h.       18 U.S.C. § 2252A(a)(5)(B) and (b)(2) prohibit a person from knowingly possessing or knowingly accessing with intent to view, or attempting or conspiring to do so, any material that contains an image of child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce, by any means, including by computer, or that was produced using materials that have been mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

i.       18 U.S.C. § 2422(b) prohibits any person from using the mail or any facility or means of interstate or foreign commerce to knowingly persuade, induce, entice, or coerce any individual who has not attained the age of 18 years to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempting to do so.

## BACKGROUND OF THE INVESTIGATION AND PROBABLE CAUSE
### Background on Online Child Sex Trafficking and Exploitation

7.      HSI is investigating individuals who provide access to pre-produced child sexual abuse material and live-streaming online webcam shows involving the sexual abuse of children to paying customers worldwide. This growing transnational child-sexual-abuse industry includes child sex traffickers in, among other places, the Philippines, who collect viewership fees from vetted customers scattered throughout the world. Paying customers often request that these child sex traffickers provide pre-recorded depictions of minors engaging in sexually explicit conduct or sexually abuse minors in real time during private webcam interactions on a variety of streaming video services and applications.

8.      Based on my training, experience, and information conveyed to me by other law enforcement agents involved in the investigation of live-streaming depictions of child sexual abuse, I know that it is common for such traffickers in the Philippines and elsewhere to be communicating with a large number of individuals who are paying for access to such material. I also know that it is common for the paying customers to be communicating with other traffickers— and sometimes many other traffickers—who are selling access to similar material over the internet. These individuals often use a variety of money service businesses to pay the traffickers or associates of the traffickers for access to this material, including Western Union, WorldRemit, MoneyGram, PayPal, Xoom, and Remitly.

9.      HSI has identified an individual (hereinafter referred to as the "TRAFFICKER") operating a child-sex-trafficking network from the Philippines. Based on undercover activity and other investigation, HSI is aware that the TRAFFICKER did, in fact, have access to minors to sexually abuse on camera and has offered to provide access, through the TRAFFICKER's Skype account, to visual depictions of one or more minors engaging in sexually explicit conduct in

6

exchange for money. The investigation has revealed that the Skype account live:sliprock900 was communicating with at least one TRAFFICKER.

**Communications between live:sliprock900 and the TRAFFICKER-1**

10.     In response to a federal search warrant, Microsoft provided HSI with information associated with the Skype account used by the TRAFFICKER, hereinafter referred to as "TRAFFICKER-1". The information provided by Skype revealed chat content between the TRAFFICKER-1 and the Skype account live:sliprock900.

11.     Specifically, according to the Microsoft records, between March 5, 2019, and October 27, 2020, the Skype account live:sliprock900 and the TRAFFICKER-1 exchanged approximately 79 messages, 8 calls, and 0 media files.

12.     I have reviewed the Skype chat communications between the Skype account live:sliprock900 and the TRAFFICKER-1. Based on my review, my training, experience, and information conveyed to me by other law enforcement officers involved with the investigation of online child sex trafficking, I believe the chat conversations are consistent with the sale of live-streaming depictions of child sexual abuse, as further described below, wherein the child sex trafficker provides another individual with access to pre-produced or live-streaming video depictions of minors engaged in sexually explicit conduct in exchange for money.

13.     The following excerpts are an example of conversations contained in chat data obtained from the search warrant:

| Participants | Message | Message Sent Time |
|---|---|---|
| *Sender:* TRAFFICKER-1 <br> *Receiver(s):* live:sliprock900 | Hiii | 2019-03-05 13:08:45 |
| *Sender:* live:sliprock900 <br> *Receiver(s):* TRAFFICKER-1 | Oh hi<context suggestionId='f05573c0-600e-496c-b4d0-1b905ae154da' | 2019-03-05 13:09:05 |
| *Sender:* TRAFFICKER-1 <br> *Receiver(s):* live:sliprock900 | Call started | 2019-03-05 14:40:58 |

| | | |
|---|---|---|
| *Sender:* **TRAFFICKER-1** *Receiver(s):* **live:sliprock900** | Call started | 2019-03-05 14:41:17 |
| *Sender:* **TRAFFICKER-1** *Receiver(s):* **live:sliprock900** | Call ended after 62.299 seconds | 2019-03-05 14:42:13 |
| *Sender:* **live:sliprock900** *Receiver(s):* **TRAFFICKER-1** | Call missed | 2019-03-05 15:30:59 |
| *Sender:* **TRAFFICKER-1** *Receiver(s):* **live:sliprock900** | I'm here | 2019-03-05 16:09:50 |
| *Sender:* **TRAFFICKER-1** *Receiver(s):* **live:sliprock900** | Sorry net having pro lem | 2019-03-05 16:10:00 |
| *Sender:* **live:sliprock900** *Receiver(s):* **TRAFFICKER-1** | ok | 2019-03-05 16:13:54 |
| *Sender:* **TRAFFICKER-1** *Receiver(s):* **live:sliprock900** | Wanna play again hun | 2019-03-05 16:15:41 |
| *Sender:* **live:sliprock900** *Receiver(s):* **TRAFFICKER-1** | who bb? | 2019-03-05 16:17:48 |
| *Sender:* **TRAFFICKER-1** *Receiver(s):* **live:sliprock900** | A girl that do show onu earlier | 2019-03-05 16:25:16 |
| *Sender:* **TRAFFICKER-1** *Receiver(s):* **live:sliprock900** | U like? | 2019-03-05 16:25:47 |
| *Sender:* **live:sliprock900** *Receiver(s):* **TRAFFICKER-1** | sure | 2019-03-05 16:25:55 |
| *Sender:* **TRAFFICKER-1** *Receiver(s):* **live:sliprock900** | Ok | 2019-03-05 16:26:01 |
| *Sender:* **TRAFFICKER-1** *Receiver(s):* **live:sliprock900** | Can I open my room now | 2019-03-05 16:26:10 |
| *Sender:* **live:sliprock900** *Receiver(s):* **TRAFFICKER-1** | what room i forgot | 2019-03-05 16:26:24 |
| *Sender:* **TRAFFICKER-1** *Receiver(s):* **live:sliprock900** | Wait hun | 2019-03-05 16:27:46 |
| *Sender:* **TRAFFICKER-1** *Receiver(s):* **live:sliprock900** | wildmilkyangel | 2019-03-05 16:31:56 |
| *Sender:* **TRAFFICKER-1** *Receiver(s):* **live:sliprock900** | Still there | 2019-03-05 16:32:02 |
| *Sender:* **TRAFFICKER-1** *Receiver(s):* **live:sliprock900** | Room is open now | 2019-03-05 16:32:04 |
| *Sender:* **live:sliprock900** *Receiver(s):* **TRAFFICKER-1** | what site? | 2019-03-05 16:32:16 |
| *Sender:* **TRAFFICKER-1** *Receiver(s):* **live:sliprock900** | Asian24/7 | 2019-03-05 16:33:13 |
| *Sender:* **TRAFFICKER-1** *Receiver(s):* **live:sliprock900** | wildmilkyangel | 2019-03-05 16:33:24 |
| *Sender:* **TRAFFICKER-1** *Receiver(s):* **live:sliprock900** | ROM name | 2019-03-05 16:33:27 |
| *Sender:* **TRAFFICKER-1** *Receiver(s):* **live:sliprock900** | R u going to come | 2019-03-05 16:33:54 |

| Sender/Receiver | Message | Timestamp |
|---|---|---|
| *Sender:* **live:sliprock900**<br>*Receiver(s):* TRAFFICKER-1 | Yeah, I am coming<context suggestionId='9517192e-33d2-4e82-85e2-eb6c176fb8c1' | 2019-03-05 16:34:01 |
| *Sender:* **TRAFFICKER-1**<br>*Receiver(s):* live:sliprock900 | R u going to come | 2019-03-05 16:34:08 |
| *Sender:* **TRAFFICKER-1**<br>*Receiver(s):* live:sliprock900 | ROom is open now | 2019-03-05 16:34:09 |
| *Sender:* **live:sliprock900**<br>*Receiver(s):* TRAFFICKER-1 | only have 15 now | 2019-03-05 16:35:57 |
| *Sender:* **live:sliprock900**<br>*Receiver(s):* TRAFFICKER-1 | or have to wait till later | 2019-03-05 16:36:08 |
| *Sender:* **TRAFFICKER-1**<br>*Receiver(s):* live:sliprock900 | Only 15 | 2019-03-05 16:36:30 |
| *Sender:* **live:sliprock900**<br>*Receiver(s):* TRAFFICKER-1 | go prvt? | 2019-03-05 16:36:31 |
| *Sender:* **TRAFFICKER-1**<br>*Receiver(s):* live:sliprock900 | Tip hun | 2019-03-05 16:36:47 |
| *Sender:* **TRAFFICKER-1**<br>*Receiver(s):* live:sliprock900 | Tip hun | 2019-03-05 16:37:47 |
| *Sender:* **TRAFFICKER-1**<br>*Receiver(s):* live:sliprock900 | Did u sent tip now | 2019-03-05 16:37:51 |
| *Sender:* **TRAFFICKER-1**<br>*Receiver(s):* live:sliprock900 | Wat happen | 2019-03-05 16:37:52 |
| *Sender:* **TRAFFICKER-1**<br>*Receiver(s):* live:sliprock900 | U gone | 2019-03-05 16:37:52 |
| *Sender:* **live:sliprock900**<br>*Receiver(s):* TRAFFICKER-1 | how much? | 2019-03-05 16:38:06 |
| *Sender:* **live:sliprock900**<br>*Receiver(s):* TRAFFICKER-1 | 15 | 2019-03-05 16:38:17 |
| *Sender:* **TRAFFICKER-1**<br>*Receiver(s):* live:sliprock900 | OK Hun | 2019-03-05 16:39:25 |
| *Sender:* **TRAFFICKER-1**<br>*Receiver(s):* live:sliprock900 | Yes hun | 2019-03-05 16:39:26 |
| *Sender:* **live:sliprock900**<br>*Receiver(s):* TRAFFICKER-1 | ok | 2019-03-05 16:40:18 |
| *Sender:* **live:sliprock900**<br>*Receiver(s):* TRAFFICKER-1 | Call started | 2019-03-05 16:41:09 |
| *Sender:* **TRAFFICKER-1**<br>*Receiver(s):* live:sliprock900 | OK tnx hun | 2019-03-05 16:41:26 |
| *Sender:* **TRAFFICKER-1**<br>*Receiver(s):* live:sliprock900 | I call her now | 2019-03-05 16:41:35 |
| *Sender:* **live:sliprock900**<br>*Receiver(s):* TRAFFICKER-1 | ok | 2019-03-05 16:41:41 |
| *Sender:* **live:sliprock900**<br>*Receiver(s):* TRAFFICKER-1 | dont see you | 2019-03-05 16:41:49 |
| *Sender:* **TRAFFICKER-1**<br>*Receiver(s):* live:sliprock900 | Hun my girl want u to add more | 2019-03-05 16:42:18 |

| | | |
|---|---|---|
| **Sender: live:sliprock900**<br>**Receiver(s): TRAFFICKER-1** | i said thats all i have | 2019-03-05 16:42:34 |
| **Sender: TRAFFICKER-1**<br>**Receiver(s): live:sliprock900** | I know | 2019-03-05 16:42:41 |
| **Sender: TRAFFICKER-1**<br>**Receiver(s): live:sliprock900** | That wat I did said | 2019-03-05 16:42:48 |
| **Sender: TRAFFICKER-1**<br>**Receiver(s): live:sliprock900** | Can u add somemore | 2019-03-05 16:43:09 |
| **Sender: live:sliprock900**<br>**Receiver(s): TRAFFICKER-1** | ok i can block you and never do this again | 2019-03-05 16:43:24 |
| **Sender: TRAFFICKER-1**<br>**Receiver(s): live:sliprock900** | Pls dont | 2019-03-05 16:43:43 |
| **Sender: TRAFFICKER-1**<br>**Receiver(s): live:sliprock900** | I convince her now | 2019-03-05 16:44:09 |
| **Sender: live:sliprock900**<br>**Receiver(s): TRAFFICKER-1** | Call ended after 222.507 seconds | 2019-03-05 16:44:52 |
| **Sender: live:sliprock900**<br>**Receiver(s): TRAFFICKER-1** | ok never again | 2019-03-05 16:45:07 |
| **Sender: TRAFFICKER-1**<br>**Receiver(s): live:sliprock900** | Back | 2019-03-05 16:49:21 |
| **Sender: TRAFFICKER-1**<br>**Receiver(s): live:sliprock900** | Sorr6 got dc | 2019-03-05 16:49:33 |
| **Sender: TRAFFICKER-1**<br>**Receiver(s): live:sliprock900** | Call missed | 2019-03-05 16:51:16 |
| **Sender: TRAFFICKER-1**<br>**Receiver(s): live:sliprock900** | Hey | 2019-03-05 16:51:38 |
| **Sender: TRAFFICKER-1**<br>**Receiver(s): live:sliprock900** | U see | 2019-03-05 16:52:13 |
| **Sender: TRAFFICKER-1**<br>**Receiver(s): live:sliprock900** | Msg me so I know | 2019-03-05 16:52:27 |
| **Sender: TRAFFICKER-1**<br>**Receiver(s): live:sliprock900** | Call missed | 2019-03-05 16:55:37 |
| **Sender: TRAFFICKER-1**<br>**Receiver(s): live:sliprock900** | Wer r u now | 2019-03-05 16:55:41 |
| **Sender: TRAFFICKER-1**<br>**Receiver(s): live:sliprock900** | She here now | 2019-03-05 16:55:48 |

## Communications live:3535383e50cdaf4 and the TRAFFICKER-2

14.     In response to a federal search warrant, Microsoft provided HSI with information associated with the Skype account used by the TRAFFICKER, hereinafter referred to as "TRAFFICKER-2". The information provided by Skype revealed chat content between the TRAFFICKER-2 and the Skype account live:3535383e50cdaf4.

15.    Specifically, according to the Microsoft records, between June 7, 2020, and June 18, 2020, the Skype account live:3535383e50cdaf4 and the TRAFFICKER-2 exchanged approximately 25 messages and 1 call.

16.    I have reviewed the Skype chat communications between the Skype account live:3535383e50cdaf4 and the TRAFFICKER-2. Based on my review, my training, experience, and information conveyed to me by other law enforcement officers involved with the investigation of online child sex trafficking, I believe the chat conversations are consistent with the sale of live-streaming depictions of child sexual abuse, as further described below, wherein the child sex trafficker provides another individual with access to pre-produced or live-streaming video depictions of minors engaged in sexually explicit conduct in exchange for money.

17.    The following excerpts are an example of conversations contained in chat data obtained from the search warrant:

| Participants | Message | Message Sent Time |
|---|---|---|
| *Sender:* live:3535383e50cdaf4 *Receiver(s):* TRAFFICKER-2 | how old your girl? | 2020-06-07 02:16:39 |
| *Sender:* TRAFFICKER-2 *Receiver(s):* live:3535383e50cdaf4 | why | 2020-06-07 02:17:04 |
| *Sender:* TRAFFICKER-2 *Receiver(s):* live:3535383e50cdaf4 | tell me staright u like yojnger | 2020-06-07 02:17:13 |
| *Sender:* live:3535383e50cdaf4 *Receiver(s):* TRAFFICKER-2 | like all bb and older too | 2020-06-07 02:17:28 |
| *Sender:* TRAFFICKER-2 *Receiver(s):* live:3535383e50cdaf4 | HON CAN I OFFER U SHOW EHRE? | 2020-06-07 02:18:45 |
| *Sender:* live:3535383e50cdaf4 *Receiver(s):* TRAFFICKER-2 | what u do in show? | 2020-06-07 02:19:22 |
| *Sender:* TRAFFICKER-2 *Receiver(s):* live:3535383e50cdaf4 | \OR CAN U LET ME SELL U VIDEOS IOF YOUNGER | 2020-06-07 02:19:32 |
| *Sender:* live:3535383e50cdaf4 *Receiver(s):* TRAFFICKER-2 | age? | 2020-06-07 02:19:50 |
| *Sender:* TRAFFICKER-2 *Receiver(s):* live:3535383e50cdaf4 | 12 AND 9 | 2020-06-07 02:20:52 |
| *Sender:* live:3535383e50cdaf4 *Receiver(s):* TRAFFICKER-2 | b and g? | 2020-06-07 02:21:10 |
| *Sender:* TRAFFICKER-2 *Receiver(s):* live:3535383e50cdaf4 | G | 2020-06-07 02:21:45 |

| Sender: live:3535383e50cdaf4<br>Receiver(s): TRAFFICKER-2 | cool | 2020-06-07 02:21:52 |
|---|---|---|
| Sender: live:3535383e50cdaf4<br>Receiver(s): TRAFFICKER-2 | show me some | 2020-06-07 02:22:44 |

## Communications between live:sliprock900 and the TRAFFICKER-3

18.     In response to a federal search warrant, Microsoft provided HSI with information associated with the Skype account used by the TRAFFICKER, hereinafter referred to as "TRAFFICKER-3". The information provided by Skype revealed chat content between the TRAFFICKER-3 and the Skype account live:sliprock900.

19.     Specifically, according to the Microsoft records, between June 20, 2018, and March 5, 2019, the Skype account live:sliprock900 and the TRAFFICKER-3 exchanged approximately 695 messages, 7 calls, and 4 media files.

20.     I have reviewed the Skype chat communications between the Skype account live:sliprock900 and the TRAFFICKER-3. Based on my review, my training, experience, and information conveyed to me by other law enforcement officers involved with the investigation of online child sex trafficking, I believe the chat conversations are consistent with the sale of live-streaming depictions of child sexual abuse, as further described below, wherein the child sex trafficker provides another individual with access to pre-produced or live-streaming video depictions of minors engaged in sexually explicit conduct in exchange for money.

21.     The following excerpts are an example of conversations contained in chat data obtained from the search warrant:

| Participants | Message | Message Sent Time |
|---|---|---|
| Sender: TRAFFICKER-3<br>Receiver(s): live:sliprock900 | wait u  sent hun so that i log out in site | 2019-01-12 03:46:04 |
| Sender: live:sliprock900<br>Receiver(s): TRAFFICKER-3 | yes | 2019-01-12 03:46:24 |
| Sender: live:sliprock900<br>Receiver(s): TRAFFICKER-3 | i sent now | 2019-01-12 03:48:49 |

12

| | | |
|---|---|---|
| *Sender:* **live:sliprock900** <br> *Receiver(s):* **TRAFFICKER-3** | **ok now?** | **2019-01-12 03:50:39** |
| *Sender:* **TRAFFICKER-3** <br> *Receiver(s):* **live:sliprock900** | **u done sent hun ?** | **2019-01-12 03:50:41** |
| *Sender:* **live:sliprock900** <br> *Receiver(s):* **TRAFFICKER-3** | **yes** | **2019-01-12 03:50:45** |
| *Sender:* **TRAFFICKER-3** <br> *Receiver(s):* **live:sliprock900** | **wait i check hun** | **2019-01-12 03:50:49** |
| *Sender:* **TRAFFICKER-3** <br> *Receiver(s):* **live:sliprock900** | **thank u so  much  hun** | **2019-01-12 03:52:16** |
| *Sender:* **live:sliprock900** <br> *Receiver(s):* **TRAFFICKER-3** | **ready?** | **2019-01-12 03:53:18** |
| *Sender:* **TRAFFICKER-3** <br> *Receiver(s):* **live:sliprock900** | **wait hun  she pee** | **2019-01-12 03:53:32** |
| *Sender:* **live:sliprock900** <br> *Receiver(s):* **TRAFFICKER-3** | **all 3?** | **2019-01-12 03:53:45** |
| *Sender:* **TRAFFICKER-3** <br> *Receiver(s):* **live:sliprock900** | **10  and 14  only here  hun** | **2019-01-12 03:54:04** |
| *Sender:* **TRAFFICKER-3** <br> *Receiver(s):* **live:sliprock900** | **the 13   outside  go  to her classmate** | **2019-01-12 03:54:24** |
| *Sender:* **live:sliprock900** <br> *Receiver(s):* **TRAFFICKER-3** | **ok** | **2019-01-12 03:54:29** |
| *Sender:* **TRAFFICKER-3** <br> *Receiver(s):* **live:sliprock900** | **so  2 girls ?** | **2019-01-12 03:54:35** |
| *Sender:* **live:sliprock900** <br> *Receiver(s):* **TRAFFICKER-3** | **sure start mnow** | **2019-01-12 03:54:48** |
| *Sender:* **TRAFFICKER-3** <br> *Receiver(s):* **live:sliprock900** | **the 14 here  now   the 10  wait for  amin . <br> hun  she buy ouside** | **2019-01-12 03:55:17** |
| *Sender:* **TRAFFICKER-3** <br> *Receiver(s):* **live:sliprock900** | **we wait her  we start for 14 now ?** | **2019-01-12 03:55:30** |
| *Sender:* **live:sliprock900** <br> *Receiver(s):* **TRAFFICKER-3** | **ok'** | **2019-01-12 03:55:39** |
| *Sender:* **TRAFFICKER-3** <br> *Receiver(s):* **live:sliprock900** | **we wait  the or we start the 14 now ?** | **2019-01-12 03:55:51** |
| *Sender:* **live:sliprock900** <br> *Receiver(s):* **TRAFFICKER-3** | **how long wait?** | **2019-01-12 03:56:06** |
| *Sender:* **TRAFFICKER-3** <br> *Receiver(s):* **live:sliprock900** | **b4 10 mins** | **2019-01-12 03:56:18** |
| *Sender:* **live:sliprock900** <br> *Receiver(s):* **TRAFFICKER-3** | **start now** | **2019-01-12 03:56:28** |
| *Sender:* **TRAFFICKER-3** <br> *Receiver(s):* **live:sliprock900** | **ahh ok** | **2019-01-12 03:56:32** |
| *Sender:* **TRAFFICKER-3** <br> *Receiver(s):* **live:sliprock900** | **call  now hun** | **2019-01-12 03:56:55** |
| *Sender:* **live:sliprock900** <br> *Receiver(s):* **TRAFFICKER-3** | **Call started** | **2019-01-12 03:57:14** |
| *Sender:* **TRAFFICKER-3** <br> *Receiver(s):* **live:sliprock900** | **hello  hun** | **2019-01-12 03:57:28** |

| | | |
|---|---|---|
| *Sender:* live:sliprock900<br>*Receiver(s):* TRAFFICKER-3 | hi | 2019-01-12 03:57:32 |
| *Sender:* TRAFFICKER-3<br>*Receiver(s):* live:sliprock900 | so  waht u her like to do  now for you ? | 2019-01-12 03:58:14 |
| *Sender:* TRAFFICKER-3<br>*Receiver(s):* live:sliprock900 | tell hun | 2019-01-12 03:58:21 |
| *Sender:* TRAFFICKER-3<br>*Receiver(s):* live:sliprock900 | remember  hun  no fucking   ok ? | 2019-01-12 03:58:34 |
| *Sender:* live:sliprock900<br>*Receiver(s):* TRAFFICKER-3 | see her hottt body | 2019-01-12 03:58:37 |
| *Sender:* TRAFFICKER-3<br>*Receiver(s):* live:sliprock900 | sure | 2019-01-12 03:58:42 |
| *Sender:* live:sliprock900<br>*Receiver(s):* TRAFFICKER-3 | mmmm | 2019-01-12 03:59:06 |
| *Sender:* live:sliprock900<br>*Receiver(s):* TRAFFICKER-3 | lots of hair mmmm | 2019-01-12 03:59:25 |
| *Sender:* TRAFFICKER-3<br>*Receiver(s):* live:sliprock900 | ohh yeahhh | 2019-01-12 03:59:34 |
| *Sender:* TRAFFICKER-3<br>*Receiver(s):* live:sliprock900 | u like ? | 2019-01-12 03:59:37 |
| *Sender:* live:sliprock900<br>*Receiver(s):* TRAFFICKER-3 | yes bb | 2019-01-12 03:59:42 |
| *Sender:* TRAFFICKER-3<br>*Receiver(s):* live:sliprock900 | thats good to hear hun | 2019-01-12 03:59:52 |
| *Sender:* TRAFFICKER-3<br>*Receiver(s):* live:sliprock900 | y 10 dont have yet hair | 2019-01-12 04:00:02 |
| *Sender:* live:sliprock900<br>*Receiver(s):* TRAFFICKER-3 | ic | 2019-01-12 04:00:14 |
| *Sender:* live:sliprock900<br>*Receiver(s):* TRAFFICKER-3 | wish i see her too | 2019-01-12 04:00:24 |
| *Sender:* TRAFFICKER-3<br>*Receiver(s):* live:sliprock900 | yes will she coe hun | 2019-01-12 04:00:33 |
| *Sender:* live:sliprock900<br>*Receiver(s):* TRAFFICKER-3 | she like to play her pussy? | 2019-01-12 04:01:20 |
| *Sender:* TRAFFICKER-3<br>*Receiver(s):* live:sliprock900 | yes but rub and open wide only hun | 2019-01-12 04:01:35 |
| *Sender:* TRAFFICKER-3<br>*Receiver(s):* live:sliprock900 | no fuck | 2019-01-12 04:01:39 |
| *Sender:* live:sliprock900<br>*Receiver(s):* TRAFFICKER-3 | ok | 2019-01-12 04:01:41 |

**Communications between live:3535383e50cdaf4 and the TRAFFICKER-4**

22.     In response to a federal search warrant, Microsoft provided HSI with information

associated with the Skype account used by the TRAFFICKER, hereinafter referred to as

"TRAFFICKER-4". The information provided by Skype revealed chat content between the TRAFFICKER-4 and the Skype account live:3535383e50cdaf4.

23. Specifically, according to the Microsoft records, between May 21, 2021, and May 23, 2021, the Skype account live:3535383e50cdaf4 and the TRAFFICKER-4 exchanged approximately 78 messages and 1 call.

24. I have reviewed the Skype chat communications between the Skype account live:3535383e50cdaf4 and the TRAFFICKER-4. Based on my review, my training, experience, and information conveyed to me by other law enforcement officers involved with the investigation of online child sex trafficking, I believe the chat conversations are consistent with the sale of live-streaming depictions of child sexual abuse, as further described below, wherein the child sex trafficker provides another individual with access to pre-produced or live-streaming video depictions of minors engaged in sexually explicit conduct in exchange for money.

25. The following excerpts are an example of conversations contained in chat data obtained from the search warrant:

| Participants | Message | Message Sent Time |
|---|---|---|
| *Sender:* live:3535383e50cdaf4<br>*Receiver(s):* live:TRAFFICKER-4 | hi | 2021-05-21 14:59:28 |
| *Sender:* live:TRAFFICKER-4<br>*Receiver(s):* live:3535383e50cdaf4 | hello ty for accept | 2021-05-21 14:59:32 |
| *Sender:* live:TRAFFICKER-4<br>*Receiver(s):* live:3535383e50cdaf4 | what do u like | 2021-05-21 14:59:48 |
| *Sender:* live:3535383e50cdaf4<br>*Receiver(s):* live:TRAFFICKER-4 | g | 2021-05-21 15:00:00 |
| *Sender:* live:TRAFFICKER-4<br>*Receiver(s):* live:3535383e50cdaf4 | what do u pay? | 2021-05-21 15:00:04 |
| *Sender:* live:3535383e50cdaf4<br>*Receiver(s):* live:TRAFFICKER-4 | what she do? | 2021-05-21 15:00:20 |
| *Sender:* live:TRAFFICKER-4<br>*Receiver(s):* live:3535383e50cdaf4 | i play her if u like | 2021-05-21 15:00:24 |
| *Sender:* live:3535383e50cdaf4<br>*Receiver(s):* live:TRAFFICKER-4 | mmm nice | 2021-05-21 15:00:37 |
| *Sender:* live:TRAFFICKER-4<br>*Receiver(s):* live:3535383e50cdaf4 | ok | 2021-05-21 15:00:43 |

| | | |
|---|---|---|
| *Sender:* live:3535383e50cdaf4<br>*Receiver(s):* live:TRAFFICKER-4 | **can i see her bb?** | **2021-05-21 15:00:45** |
| *Sender:* live:TRAFFICKER-4<br>*Receiver(s):* live:3535383e50cdaf4 | **very slow net but u will wait** | **2021-05-21 15:01:19** |
| *Sender:* live:TRAFFICKER-4<br>*Receiver(s):* live:3535383e50cdaf4 | **Call started** | **2021-05-21 15:01:24** |
| *Sender:* live:3535383e50cdaf4<br>*Receiver(s):* live:TRAFFICKER-4 | **ok** | **2021-05-21 15:02:21** |
| *Sender:* live:TRAFFICKER-4<br>*Receiver(s):* live:3535383e50cdaf4 | **ok now** | **2021-05-21 15:03:22** |
| *Sender:* live:3535383e50cdaf4<br>*Receiver(s):* live:TRAFFICKER-4 | **ok  now** | **2021-05-21 15:03:27** |
| *Sender:* live:3535383e50cdaf4<br>*Receiver(s):* live:TRAFFICKER-4 | **pussy** | **2021-05-21 15:03:54** |
| *Sender:* live:TRAFFICKER-4<br>*Receiver(s):* live:3535383e50cdaf4 | **can u pay** | **2021-05-21 15:03:58** |
| *Sender:* live:3535383e50cdaf4<br>*Receiver(s):* live:TRAFFICKER-4 | **yes** | **2021-05-21 15:04:07** |
| *Sender:* live:TRAFFICKER-4<br>*Receiver(s):* live:3535383e50cdaf4 | **where** | **2021-05-21 15:04:08** |
| *Sender:* live:3535383e50cdaf4<br>*Receiver(s):* live:TRAFFICKER-4 | **tip** | **2021-05-21 15:04:24** |
| *Sender:* live:TRAFFICKER-4<br>*Receiver(s):* live:3535383e50cdaf4 | **how much** | **2021-05-21 15:04:59** |
| *Sender:* live:3535383e50cdaf4<br>*Receiver(s):* live:TRAFFICKER-4 | **when i see** | **2021-05-21 15:05:20** |
| *Sender:* live:3535383e50cdaf4<br>*Receiver(s):* live:TRAFFICKER-4 | **a little** | **2021-05-21 15:05:27** |
| *Sender:* live:3535383e50cdaf4<br>*Receiver(s):* live:TRAFFICKER-4 | **you show some** | **2021-05-21 15:08:06** |
| *Sender:* live:3535383e50cdaf4<br>*Receiver(s):* live:TRAFFICKER-4 | **ur tits** | **2021-05-21 15:08:11** |
| *Sender:* live:TRAFFICKER-4<br>*Receiver(s):* live:3535383e50cdaf4 | **u dont like with my young** | **2021-05-21 15:08:55** |
| *Sender:* live:3535383e50cdaf4<br>*Receiver(s):* live:TRAFFICKER-4 | **yes i do** | **2021-05-21 15:09:07** |
| *Sender:* live:TRAFFICKER-4<br>*Receiver(s):* live:3535383e50cdaf4 | **then tip** | **2021-05-21 15:09:10** |
| *Sender:* live:3535383e50cdaf4<br>*Receiver(s):* live:TRAFFICKER-4 | **she suck?** | **2021-05-21 15:09:16** |
| *Sender:* live:TRAFFICKER-4<br>*Receiver(s):* live:3535383e50cdaf4 | **yesss** | **2021-05-21 15:09:18** |
| *Sender:* live:3535383e50cdaf4<br>*Receiver(s):* live:TRAFFICKER-4 | **mmmmm** | **2021-05-21 15:11:08** |
| *Sender:* live:3535383e50cdaf4<br>*Receiver(s):* live:TRAFFICKER-4 | **nice** | **2021-05-21 15:11:43** |
| *Sender:* live:3535383e50cdaf4<br>*Receiver(s):* live:TRAFFICKER-4 | **her pussy  too** | **2021-05-21 15:12:05** |

| Sender: live:TRAFFICKER-4 Receiver(s): live:3535383e50cdaf4 | tip for her | 2021-05-21 15:12:31 |
|---|---|---|
| Sender: live:TRAFFICKER-4 Receiver(s): live:3535383e50cdaf4 | Call ended after 734.298 seconds | 2021-05-21 15:13:35 |

### Information Related to the User of the SUBJECT ACCOUNTS

26.  The records and information provided by Skype/Microsoft show that the user of

the Skype accounts provided personally identifying information, including the following:

a.  The following information, relating to the Skype account live:3535383e50cdaf4, was

obtained via summons HSI-PM-2022-017953 and ICE-HSI-PM-2022-00231:

Username: *live:3535383e50cdaf4*
Sign-In Name:  19204702736
First Name: Richard
Last Name: Bartelt
Country: United States
Account Creation: October 7, 2016 19:01:59 UTC


b.  The following information, relating to the Skype account live:sliprock900, was obtained

via summons ICE-HSI-PM-2022-00046:

Username: sliprock900
Sign-In Name: sliprock900@yahoo.com
First Name: Stan
Last Name: Mann
Country: United States
Account Creation: November 28, 2016 02:32:28 UTC
Current email address: gibanrose01@yahoo.com

c.  Open-Source and Law Enforcement Database Checks

Database checks showed historical addresses for RICHARD BARTELT matched the addresses

provided by PayPal/XOOM, with an additional address of 4850 N. Wren Drive in Appleton,

Wisconsin. The phone number listed in the PayPal/XOOM account was the same "sign in

name" provided in Microsoft summons return data for Skype account live:3535383e50cdaf4.

## Interview of RICHARD BARTELT

27.     On or about August 28, 2024, HSI Special Agent assigned to Homeland Security Investigations, Sault Ste. Marie, Michigan, was contacted by Customs and Border Protection – Office of Field Operations (CBP-OFO) at the International Bridge Plaza Port of Entry in Sault Ste. Marie concerning the detention of RICHARD BARTELT and his spouse upon making entry into the United States from Ontario, Canada.

28.     The HSI Special Agent responded to the International Bridge Plaza where he conducted a custodial interview of RICHARD BARTELT with the assistance of CBP-OFO. Upon his voluntary waiver of his Miranda Rights, RICHARD BARTELT made the following statements in sum, but not verbatim:

- That he confirmed that his name is RICHARD MYRON BARTELT and that his date of birth is February 4, 1952.

- That he's been viewing adult and child pornography for approximately two years.

- That he last accessed adult or child pornography approximately one year ago on unknown websites.

- That he engaged in online live streaming and conversed with unknown individuals.

- That he occasionally compensated these individuals a "buck or two" for the service.

- That the individuals that he conversed with via live streaming were all adults and of Asian and/or European descent.

- That these individuals were from the Philippines, Vietnam, Thailand, Germany, France, Poland, etc.

- That the live streaming depicted mothers removing clothing from their minor children thus exposing their breast areas and genitalia.

18

- That he compensated the mothers via PayPal by transferring money from his account to their accounts.

- That "sliprock900" is a username of one of his accounts on Skype.

- That he confirmed that his former address is W5994 Garnet Drive, Appleton, US-WI 54915-7401, that his current telephone number is (920) 470-2736 and that his current email address is rb04364@yahoo.com.

29.     Upon conclusion of the interview, the HSI Special Agent asked RICHARD BARTELT where his location was whenever he accessed child pornography and/or participated in the live streamed sessions. RICHARD BARTELT stated that he was always at his prior residence located at W59994 Garnet Drive, Appleton, Wisconsin.

## N9563 Friendship Drive, Apt #9, Kaukauna, WI 54130

30.     In September 2024, I learned that RICHARD BARTELT's residence at the time, located at 4850 N Wren Dr., Appleton, WI 54913, was listed for sale on or about September 10, 2024. Records showed that the residence was sold on or about November 15, 2024.

31.     On or about November 18, 2024, I contacted United States Postal Inspection Service (USPIS) and found out that RICHARD BARTELT had updated his address to **N9563 Friendship Drive, Apt #9, Kaukauna, WI 54130** (TARGET PROPERTY).

## Wisconsin Division of Criminal Investigation Surveillance on 2/18/25

32.     On or about February 18, 2025, a Wisconsin Division of Criminal Investigation (DCI) Special Agent conducted surveillance at the TARGET PROPERTY. The Special Agent observed RICHARD BARTELT driving a gray 2023 Hyundai Santa Fe SUV, Wisconsin Registration ASW-6609, leaving the parking lot of the TARGET PROPERTY.

**Surveillance at TARGET PROPERTY on 3/10/25**

33.     On or about March 10, 2025, I conducted surveillance at the TARGET PROPERTY. At approximately 11:23 am this same day, I observed a gray Hyundai Sante Fe vehicle, bearing Wisconsin license plate ASW-6609, leaving the garage area of the TARGET PROPERTY. I was able to positively identify RICHARD BARTELT as the driver of the vehicle. I then followed the vehicle as it travelled to Bergstrom Hyundai of Appleton located at 3023 N. Victory Ln., Appleton, WI 54913.

**Wisconsin License Plate ASW-6609 Record Checks**

34.     A search of law enforcement records for a Wisconsin license plate ASW-6609 appeared to show that the registration was for a gray 2023 Hyundai Santa Fe vehicle registered to RICHARD BARTELT at the TARGET PROPERTY.

**PayPal Payments**

35.     In April 2025, in response to a subpoena, I received records from PayPal for accounts associated with RICHARD BARTELT, in particular account number ending in 5695. The PayPal records listed the following information for the account holder/subscriber:

    Name: Richard Bartelt
    DOB: 2/4/1952
    Address: 4850 Wren Dr., Appleton, WI 54913
    Phone Number: 920-470-2736
    Email: rb04364@yahoo.com
    Account Creation: 3/6/2005
    Status: OPEN

36.     Provided with the PayPal records were transactions for the account, which showed there were multiple transactions of money sent to the Philippines, as seen below:

| Created Date | USD Equivalent | Transaction Type | Status | Counterparty Name | Counterparty Country Code | Counterparty Email |
|---|---|---|---|---|---|---|
| 1/7/2024 | $44.96 | REQUEST_MONEY | CANCELED | Princess Reas | PH | princessreas0530@gmail.com |
| 11/18/2019 | $38.43 | General Payment-Personal | Completed | aya medel | PH | medelaya26@gmail.com |
| 9/14/2019 | $38.54 | General Payment-Personal | Completed | Edwin Cabero jr. | PH | edwincaberojr@yahoo.com |
| 1/21/2019 | $48.35 | General Payment-Personal | Completed | lucita tome | PH | lucytome2024@gmail.com |
| 1/12/2019 | $87.00 | General Payment-Personal | Completed | Mary ann Maringal | PH | danmarylorrvielyann@yahoo.com |
| 11/2/2018 | $50.00 | REQUEST_MONEY | CANCELED | annamarie parolina | PH | mahal_172000@yahoo.com |
| 11/2/2018 | $50.00 | General Payment | Completed | annamarie parolina | PH | mahal_172000@yahoo.com |
| 11/2/2018 | $50.00 | REQUEST_MONEY | PAID | annamarie parolina | PH | mahal_172000@yahoo.com |
| 8/26/2018 | $48.45 | General Payment | Completed | Jinky Tome | PH | tomenine09@yahoo.com |
| 8/14/2018 | $67.76 | General Payment | Completed | Jinky Tome | PH | tomenine09@yahoo.com |
| 5/20/2017 | $33.82 | General Payment-Personal | Completed | JZ store | PH | sabat.pholyn@yahoo.com |
| 4/27/2017 | $28.98 | General Payment-Personal | Completed | Jinky Tome | PH | jhinky_tome@yahoo.com |

37.     I conducted a review of the Skype communications and noted that some of the same emails were mentioned during the discussion of payments related to live-streaming sessions of underage children.

38.     In particular, below is communication between Skype accounts live:sliprock900 and live:andiee.sanchez. The communication appears to discuss three underage kids, ages 3, 2, and 3 months, which is then followed by a discussion of payment to email account medelaya26@gmail.com. Based on my review, my training, experience, and information conveyed to me by other law enforcement officers involved with the investigation of online child sex trafficking, I believe the chat conversations are consistent with the sale of live-streaming depictions of child sexual abuse, wherein the child sex trafficker provides another individual with

access to pre-produced or live-streaming video depictions of minors engaged in sexually explicit conduct in exchange for money.

| Message From | Message To | Message | Message Sent (UTC) |
|---|---|---|---|
| live:sliprock900 | live:andiee.sanchez | ur kids there? | 11/18/2019 14:40 |
| live:andiee.sanchez | live:sliprock900 | Yes | 11/18/2019 14:42 |
| live:sliprock900 | live:andiee.sanchez | just the baby? | 11/18/2019 14:42 |
| live:andiee.sanchez | live:sliprock900 | No the 3 here | 11/18/2019 14:43 |
| live:andiee.sanchez | live:sliprock900 | My 2 at my moms house | 11/18/2019 14:44 |
| live:sliprock900 | live:andiee.sanchez | i like cock too hun | 11/18/2019 14:44 |
| live:andiee.sanchez | live:sliprock900 | Mmm | 11/18/2019 14:45 |
| live:sliprock900 | live:andiee.sanchez | is that ok? | 11/18/2019 14:46 |
| live:andiee.sanchez | live:sliprock900 | Its ok | 11/18/2019 14:46 |
| live:sliprock900 | live:andiee.sanchez | what age there? | 11/18/2019 14:47 |
| live:andiee.sanchez | live:sliprock900 | 3<br>2<br>And 3months | 11/18/2019 14:47 |
| live:sliprock900 | live:andiee.sanchez | mmmm | 11/18/2019 14:47 |
| live:sliprock900 | live:andiee.sanchez | when can i see cock? | 11/18/2019 14:50 |
| live:andiee.sanchez | live:sliprock900 | U pay ofc | 11/18/2019 14:52 |
| live:sliprock900 | live:andiee.sanchez | sure how much? | 11/18/2019 14:53 |
| live:andiee.sanchez | live:sliprock900 | Paypal | 11/18/2019 14:53 |
| live:sliprock900 | live:andiee.sanchez | i have | 11/18/2019 14:53 |
| live:andiee.sanchez | live:sliprock900 | Great | 11/18/2019 14:53 |
| live:andiee.sanchez | live:sliprock900 | 40$ u can | 11/18/2019 14:53 |
| live:sliprock900 | live:andiee.sanchez | what you do? | 11/18/2019 14:53 |
| live:andiee.sanchez | live:sliprock900 | Get naked then play | 11/18/2019 14:54 |
| live:sliprock900 | live:andiee.sanchez | ok wait | 11/18/2019 14:54 |
| live:andiee.sanchez | live:sliprock900 | Ok | 11/18/2019 14:55 |
| live:andiee.sanchez | live:sliprock900 | Medelaya26@gmail.com<br>My paypal | 11/18/2019 14:55 |
| live:sliprock900 | live:andiee.sanchez | ok | 11/18/2019 15:08 |
| live:sliprock900 | live:andiee.sanchez | u there bb? | 11/18/2019 15:10 |
| live:sliprock900 | live:andiee.sanchez | **Event/Call** | 11/18/2019 15:10 |
| live:andiee.sanchez | live:sliprock900 | Yes why | 11/18/2019 15:10 |
| live:sliprock900 | live:andiee.sanchez | can i still send? | 11/18/2019 15:10 |
| live:sliprock900 | live:andiee.sanchez | they sleeping? | 11/18/2019 15:11 |
| live:andiee.sanchez | live:sliprock900 | Yes other sleeping | 11/18/2019 15:11 |
| live:sliprock900 | live:andiee.sanchez | any b there to play? | 11/18/2019 15:12 |
| live:andiee.sanchez | live:sliprock900 | Yes | 11/18/2019 15:13 |
| live:sliprock900 | live:andiee.sanchez | ok | 11/18/2019 15:13 |
| live:sliprock900 | live:andiee.sanchez | **Event/Call** | 11/18/2019 15:15 |
| live:andiee.sanchez | live:sliprock900 | Mmmm | 11/18/2019 15:21 |
| live:sliprock900 | live:andiee.sanchez | ready now? | 11/18/2019 15:22 |
| live:andiee.sanchez | live:sliprock900 | Did u send | 11/18/2019 15:22 |
| live:sliprock900 | live:andiee.sanchez | u want pesos or us? | 11/18/2019 15:23 |

| live:andiee.sanchez | live:sliprock900 | Us | 11/18/2019 15:24 |
|---|---|---|---|
| live:sliprock900 | live:andiee.sanchez | yes i sent | 11/18/2019 15:25 |
| live:sliprock900 | live:andiee.sanchez | **Event/Call** | 11/18/2019 15:25 |
| live:sliprock900 | live:andiee.sanchez | i sent it hun | 11/18/2019 15:26 |
| live:sliprock900 | live:andiee.sanchez | mmmm nice | 11/18/2019 15:26 |
| live:sliprock900 | live:andiee.sanchez | where b? | 11/18/2019 15:28 |
| live:sliprock900 | live:andiee.sanchez | **Event/Call** | 11/18/2019 15:29 |
| live:sliprock900 | live:andiee.sanchez | **Event/Call** | 11/18/2019 15:30 |
| live:andiee.sanchez | live:sliprock900 | Did i send | 11/18/2019 15:33 |
| live:andiee.sanchez | live:sliprock900 | Did u | 11/18/2019 15:34 |
| live:sliprock900 | live:andiee.sanchez | yes i did 40 | 11/18/2019 15:35 |
| live:sliprock900 | live:andiee.sanchez | **Event/Call** | 11/18/2019 15:36 |
| live:sliprock900 | live:andiee.sanchez | hello | 11/18/2019 15:37 |
| live:andiee.sanchez | live:sliprock900 | **Event/Call** | 11/18/2019 15:41 |
| live:sliprock900 | live:andiee.sanchez | hi hun | 11/18/2019 15:41 |
| live:sliprock900 | live:andiee.sanchez | nice | 11/18/2019 15:41 |
| live:sliprock900 | live:andiee.sanchez | u get it bb? | 11/18/2019 15:42 |
| live:andiee.sanchez | live:sliprock900 | **Event/Call** | 11/18/2019 15:46 |
| live:andiee.sanchez | live:sliprock900 | Wait bb | 11/18/2019 15:58 |
| live:andiee.sanchez | live:sliprock900 | **Event/Call** | 11/18/2019 15:58 |
| live:sliprock900 | live:andiee.sanchez | **Event/Call** | 11/18/2019 16:31 |

39.     Additionally, below is communication between Skype accounts live:sliprock900 and marylorrvieann. The communication appears to discuss two underage girls, ages 10 and 14, followed by a discussion of payment and acknowledgement of money sent to email account danmarylorrvielyann@yahoo.com. Based on my review, my training, experience, and information conveyed to me by other law enforcement officers involved with the investigation of online child sex trafficking, I believe the chat conversations are consistent with the sale of live-streaming depictions of child sexual abuse, wherein the child sex trafficker provides another individual with access to pre-produced or live-streaming video depictions of minors engaged in sexually explicit conduct in exchange for money.

| Message From | Message To | Message | Message Sent (UTC) |
|---|---|---|---|
| live:sliprock900 | marylorrvieann | What's your name? | 1/12/2019 2:31 |
| live:sliprock900 | marylorrvieann | what site? | 1/12/2019 3:04 |
| marylorrvieann | live:sliprock900 | chathostess | 1/12/2019 3:05 |
| marylorrvieann | live:sliprock900 | annlimitedfuck | 1/12/2019 3:05 |

| live:sliprock900 | marylorrvieann | im in ur room bb | 1/12/2019 3:12 |
|---|---|---|---|
| marylorrvieann | live:sliprock900 | wat ur log in ? | 1/12/2019 3:13 |
| live:sliprock900 | marylorrvieann | stanish | 1/12/2019 3:13 |
| marylorrvieann | live:sliprock900 | ahh ok | 1/12/2019 3:13 |
| marylorrvieann | live:sliprock900 | can we have show paypal but by sending show hun ? | 1/12/2019 3:14 |
| live:sliprock900 | marylorrvieann | what girl? | 1/12/2019 3:14 |
| live:sliprock900 | marylorrvieann | | 1/12/2019 3:15 |
| marylorrvieann | live:sliprock900 | but hun we do show only by money send 1st | 1/12/2019 3:15 |
| marylorrvieann | live:sliprock900 | can u hun ? | 1/12/2019 3:16 |
| live:sliprock900 | marylorrvieann | i can | 1/12/2019 3:16 |
| live:sliprock900 | marylorrvieann | but too many times i get nothing after i pay | 1/12/2019 3:16 |
| marylorrvieann | live:sliprock900 | not all sae hun | 1/12/2019 3:16 |
| marylorrvieann | live:sliprock900 | if u can send by paypal uch better bcoz once u sent we can do show right away | 1/12/2019 3:17 |
| marylorrvieann | live:sliprock900 | no need to wait to get money 1st b4 show | 1/12/2019 3:17 |
| marylorrvieann | live:sliprock900 | to be fair | 1/12/2019 3:17 |
| marylorrvieann | live:sliprock900 | i understand u hun | 1/12/2019 3:17 |
| marylorrvieann | live:sliprock900 | but try e 1st by show here | 1/12/2019 3:18 |
| live:sliprock900 | marylorrvieann | thats why i ask for a little so i know they well show | 1/12/2019 3:18 |
| live:sliprock900 | marylorrvieann | how much paypal? | 1/12/2019 3:18 |
| marylorrvieann | live:sliprock900 | sorry hun but i can asure you that they good show for u | 1/12/2019 3:18 |
| marylorrvieann | live:sliprock900 | 50$ each hun | 1/12/2019 3:19 |
| live:sliprock900 | marylorrvieann | too much | 1/12/2019 3:19 |
| marylorrvieann | live:sliprock900 | how uch u can ? | 1/12/2019 3:19 |
| marylorrvieann | live:sliprock900 | much | 1/12/2019 3:19 |
| live:sliprock900 | marylorrvieann | too big a chance to take if i dont see some | 1/12/2019 3:21 |
| marylorrvieann | live:sliprock900 | how uch u can for now so that we can start build trust | 1/12/2019 3:22 |
| marylorrvieann | live:sliprock900 | bcoz my girls do show only if really send | 1/12/2019 3:22 |
| marylorrvieann | live:sliprock900 | thats all i can do hun | 1/12/2019 3:23 |
| live:sliprock900 | marylorrvieann | ok | 1/12/2019 3:23 |
| marylorrvieann | live:sliprock900 | | 1/12/2019 3:23 |
| marylorrvieann | live:sliprock900 | | 1/12/2019 3:15 |
| marylorrvieann | live:sliprock900 | 25 $ | 1/12/2019 3:30 |
| live:sliprock900 | marylorrvieann | just need to see some a little | 1/12/2019 3:30 |
| marylorrvieann | live:sliprock900 | like? | 1/12/2019 3:30 |
| live:sliprock900 | marylorrvieann | tits | 1/12/2019 3:31 |
| marylorrvieann | live:sliprock900 | ok | 1/12/2019 3:31 |

| live:sliprock900 | marylorrvieann | not the little one | 1/12/2019 3:31 |
|---|---|---|---|
| marylorrvieann | live:sliprock900 | i know | 1/12/2019 3:31 |
| marylorrvieann | live:sliprock900 | call | 1/12/2019 3:32 |
| live:sliprock900 | marylorrvieann | **Event/Call** | 1/12/2019 3:32 |
| marylorrvieann | live:sliprock900 | u see her now ? | 1/12/2019 3:32 |
| live:sliprock900 | marylorrvieann | yes | 1/12/2019 3:32 |
| live:sliprock900 | marylorrvieann | mmmmm | 1/12/2019 3:33 |
| marylorrvieann | live:sliprock900 | ok now | 1/12/2019 3:33 |
| live:sliprock900 | marylorrvieann | ok | 1/12/2019 3:33 |
| marylorrvieann | live:sliprock900 | so? | 1/12/2019 3:33 |
| live:sliprock900 | marylorrvieann | facw? | 1/12/2019 3:33 |
| live:sliprock900 | marylorrvieann | face | 1/12/2019 3:33 |
| live:sliprock900 | marylorrvieann | cute | 1/12/2019 3:33 |
| marylorrvieann | live:sliprock900 | u ok now ? | 1/12/2019 3:34 |
| live:sliprock900 | marylorrvieann | how many there? | 1/12/2019 3:34 |
| marylorrvieann | live:sliprock900 | | 1/12/2019 3:34 |
| live:sliprock900 | marylorrvieann | which one was that? | 1/12/2019 3:34 |
| marylorrvieann | live:sliprock900 | | 1/12/2019 3:34 |
| live:sliprock900 | marylorrvieann | ok | 1/12/2019 3:34 |
| live:sliprock900 | marylorrvieann | 25 | 1/12/2019 3:35 |
| marylorrvieann | live:sliprock900 | can u ake 30 hehehhe | 1/12/2019 3:35 |
| marylorrvieann | live:sliprock900 | make | 1/12/2019 3:35 |
| live:sliprock900 | marylorrvieann | what ur email? | 1/12/2019 3:35 |
| marylorrvieann | live:sliprock900 | danmarylorrvieann | 1/12/2019 3:36 |
| marylorrvieann | live:sliprock900 | @yahoo.co | 1/12/2019 3:36 |
| marylorrvieann | live:sliprock900 | danmarylorrvielyann@yahoo.com | 1/12/2019 3:36 |
| marylorrvieann | live:sliprock900 | wait i go pee hun | 1/12/2019 3:36 |
| live:sliprock900 | marylorrvieann | ok i log in | 1/12/2019 3:36 |
| live:sliprock900 | marylorrvieann | me too | 1/12/2019 3:36 |
| marylorrvieann | live:sliprock900 | u done sent? | 1/12/2019 3:39 |
| marylorrvieann | live:sliprock900 | | 1/12/2019 3:40 |
| marylorrvieann | live:sliprock900 | | 1/12/2019 3:34 |
| marylorrvieann | live:sliprock900 | | 1/12/2019 3:41 |
| marylorrvieann | live:sliprock900 | | 1/12/2019 3:34 |
| marylorrvieann | live:sliprock900 | u there? | 1/12/2019 3:41 |
| live:sliprock900 | marylorrvieann | i went pee too | 1/12/2019 3:41 |
| marylorrvieann | live:sliprock900 | ahh ok | 1/12/2019 3:41 |
| marylorrvieann | live:sliprock900 | ojhh u have caugh | 1/12/2019 3:41 |
| marylorrvieann | live:sliprock900 | take war water | 1/12/2019 3:41 |
| marylorrvieann | live:sliprock900 | warm | 1/12/2019 3:41 |
| live:sliprock900 | marylorrvieann | its cold water | 1/12/2019 3:42 |
| marylorrvieann | live:sliprock900 | uch better war water for your caugh | 1/12/2019 3:42 |
| live:sliprock900 | marylorrvieann | what they do here? | 1/12/2019 3:44 |
| marylorrvieann | live:sliprock900 | waht u aks but no fucking | 1/12/2019 3:44 |

| marylorrvieann | live:sliprock900 | wait huni use y ca in site having clients | 1/12/2019 3:44 |
|---|---|---|---|
| live:sliprock900 | marylorrvieann | **Event/Call** | 1/12/2019 3:44 |
| marylorrvieann | live:sliprock900 | wait u sent hun so that i log out in site | 1/12/2019 3:46 |
| live:sliprock900 | marylorrvieann | yes | 1/12/2019 3:46 |
| live:sliprock900 | marylorrvieann | i sent now | 1/12/2019 3:48 |
| live:sliprock900 | marylorrvieann | ok | 1/12/2019 3:49 |
| live:sliprock900 | marylorrvieann | got it? | 1/12/2019 3:49 |
| live:sliprock900 | marylorrvieann | hello | 1/12/2019 3:50 |
| marylorrvieann | live:sliprock900 | hello | 1/12/2019 3:50 |
| live:sliprock900 | marylorrvieann | ok now? | 1/12/2019 3:50 |
| marylorrvieann | live:sliprock900 | u done sent hun ? | 1/12/2019 3:50 |
| live:sliprock900 | marylorrvieann | yes | 1/12/2019 3:50 |
| marylorrvieann | live:sliprock900 | wait i check hun | 1/12/2019 3:50 |
| marylorrvieann | live:sliprock900 | ok now hun | 1/12/2019 3:52 |
| marylorrvieann | live:sliprock900 | thank u so much hun | 1/12/2019 3:52 |
| live:sliprock900 | marylorrvieann | yw | 1/12/2019 3:52 |
| live:sliprock900 | marylorrvieann | ready? | 1/12/2019 3:53 |
| marylorrvieann | live:sliprock900 | wait hun she pee | 1/12/2019 3:53 |
| live:sliprock900 | marylorrvieann | all 3? | 1/12/2019 3:53 |
| marylorrvieann | live:sliprock900 | 10 and 14 only here hun | 1/12/2019 3:54 |
| marylorrvieann | live:sliprock900 | the 13 outside go to her classmate | 1/12/2019 3:54 |
| live:sliprock900 | marylorrvieann | ok | 1/12/2019 3:54 |
| marylorrvieann | live:sliprock900 | so 2 girls ? | 1/12/2019 3:54 |
| live:sliprock900 | marylorrvieann | sure start mnow | 1/12/2019 3:54 |
| marylorrvieann | live:sliprock900 | the 14 here now the 10 wait for amin . hun she buy ouside | 1/12/2019 3:55 |
| marylorrvieann | live:sliprock900 | we wait her we start for 14 now? | 1/12/2019 3:55 |
| live:sliprock900 | marylorrvieann | ok' | 1/12/2019 3:55 |
| marylorrvieann | live:sliprock900 | we wait the or we start the 14 now? | 1/12/2019 3:55 |
| live:sliprock900 | marylorrvieann | how long wait? | 1/12/2019 3:56 |
| marylorrvieann | live:sliprock900 | b4 10 mins | 1/12/2019 3:56 |
| live:sliprock900 | marylorrvieann | start now | 1/12/2019 3:56 |
| marylorrvieann | live:sliprock900 | ahh ok | 1/12/2019 3:56 |
| marylorrvieann | live:sliprock900 | call now hun | 1/12/2019 3:56 |
| live:sliprock900 | marylorrvieann | **Event/Call** | 1/12/2019 3:57 |
| marylorrvieann | live:sliprock900 | hello hun | 1/12/2019 3:57 |
| live:sliprock900 | marylorrvieann | hi | 1/12/2019 3:57 |
| live:sliprock900 | marylorrvieann | hi bb | 1/12/2019 3:57 |
| marylorrvieann | live:sliprock900 | she say h to you hun | 1/12/2019 3:57 |
| marylorrvieann | live:sliprock900 | so waht u her like to do now for you ? | 1/12/2019 3:58 |
| marylorrvieann | live:sliprock900 | tell hun | 1/12/2019 3:58 |
| marylorrvieann | live:sliprock900 | remember hun no fucking ok ? | 1/12/2019 3:58 |
| live:sliprock900 | marylorrvieann | see her hottt body | 1/12/2019 3:58 |
| marylorrvieann | live:sliprock900 | sure | 1/12/2019 3:58 |

| | | | |
|---|---|---|---|
| live:sliprock900 | marylorrvieann | mmmm | 1/12/2019 3:59 |
| live:sliprock900 | marylorrvieann | lots of hair mmmm | 1/12/2019 3:59 |
| marylorrvieann | live:sliprock900 | ohh yeahhh | 1/12/2019 3:59 |
| marylorrvieann | live:sliprock900 | u like ? | 1/12/2019 3:59 |
| live:sliprock900 | marylorrvieann | yes bb | 1/12/2019 3:59 |
| marylorrvieann | live:sliprock900 | thats good to hear hun | 1/12/2019 3:59 |
| marylorrvieann | live:sliprock900 | y 10 dont have yet hair | 1/12/2019 4:00 |
| live:sliprock900 | marylorrvieann | ic | 1/12/2019 4:00 |
| live:sliprock900 | marylorrvieann | wish i see her too | 1/12/2019 4:00 |
| marylorrvieann | live:sliprock900 | yes will she coe hun | 1/12/2019 4:00 |
| marylorrvieann | live:sliprock900 | coe | 1/12/2019 4:00 |
| marylorrvieann | live:sliprock900 | come | 1/12/2019 4:00 |
| live:sliprock900 | marylorrvieann | ok | 1/12/2019 4:00 |
| marylorrvieann | live:sliprock900 | i ask her to buy  egg for our lunch | 1/12/2019 4:01 |
| live:sliprock900 | marylorrvieann | she like to play her pussy? | 1/12/2019 4:01 |
| marylorrvieann | live:sliprock900 | she here now hun | 1/12/2019 4:01 |
| live:sliprock900 | marylorrvieann | ok | 1/12/2019 4:01 |
| marylorrvieann | live:sliprock900 | yes but rub and open wide only hun | 1/12/2019 4:01 |
| marylorrvieann | live:sliprock900 | no fuck | 1/12/2019 4:01 |
| live:sliprock900 | marylorrvieann | ok | 1/12/2019 4:01 |
| marylorrvieann | live:sliprock900 | oshe here now hun | 1/12/2019 4:02 |
| live:sliprock900 | marylorrvieann | hi hun | 1/12/2019 4:03 |
| marylorrvieann | live:sliprock900 | u see here hun | 1/12/2019 4:03 |
| live:sliprock900 | marylorrvieann | mmmmmmm | 1/12/2019 4:04 |
| marylorrvieann | live:sliprock900 | they  shy to see each other hun | 1/12/2019 4:04 |
| marylorrvieann | live:sliprock900 | u still  see hun ? | 1/12/2019 4:05 |
| marylorrvieann | live:sliprock900 | u there ? | 1/12/2019 4:05 |
| marylorrvieann | live:sliprock900 | sorry got dc hun | 1/12/2019 4:06 |
| marylorrvieann | live:sliprock900 | u there hun ? | 1/12/2019 4:06 |
| marylorrvieann | live:sliprock900 | where are u  now hun ? | 1/12/2019 4:07 |
| marylorrvieann | live:sliprock900 | u done | 1/12/2019 4:07 |
| marylorrvieann | live:sliprock900 | ? | 1/12/2019 4:07 |
| live:sliprock900 | marylorrvieann | **Event/Call** | 1/12/2019 4:07 |
| marylorrvieann | live:sliprock900 | **Event/Call** | 1/12/2019 4:08 |
| marylorrvieann | live:sliprock900 | finish  hun ? | 1/12/2019 4:08 |
| marylorrvieann | live:sliprock900 | ty hun | 1/12/2019 4:08 |

## CHARACTERISTICS COMMON TO INDIVIDUALS WHO RECEIVE, POSSESS, AND/OR ACCESS WITH INTENT TO VIEW CHILD PORNOGRAPHY

40.     Based on my previous investigative experience related to child exploitation

investigations, and the training and experience of other law enforcement officers with whom I have

had discussions, I know there are certain characteristics common to individuals who receive, possess, and/or access with intent to view child pornography:

a. I know that the purchasing individuals often find ways to capture the live-streamed child sexual abuse and exploitation, either by recording the live shows onto their computers or taking still photographs (including "screen captures" or "screen shots") of the abuse, which can also be stored on the individual's computer or an electronic storage device. Such individuals often also save any pre-produced child sexual abuse material the traffickers provide to their computer or an electronic device for later viewing or distribution.

b. Such individuals may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

c. Such individuals may also collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification.

d. Such individuals almost always possess and maintain their hard copies of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home. Individuals who have a sexual interest in children or images of children typically retain pictures, films, photographs, negatives, magazines,

correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

e. Likewise, such individuals often maintain their child pornography images in a digital or electronic format in a safe, secure, and private environment, such as a computer and the surrounding area. These child pornography images are often maintained for several years and are kept close by, usually at the possessor's residence, inside the possessor's vehicle, or, at times, on their person, or in cloud-based online storage, to enable the individual to view the child pornography images, which are valued highly by the individual. Some of these individuals also have been found to download, view, and then delete child pornography on their computers or digital devices on a cyclical and repetitive basis.

f. Importantly, evidence of such activity, including deleted child pornography, often can be located on these individuals' computers and digital devices through the use of forensic tools. Indeed, the very nature of electronic storage means that evidence of the crime is often still discoverable for extended periods of time even after the individual "deleted" it.

g. Such individuals also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/possessors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses (including e-mail addresses), and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

h. Such individuals prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world. Thus, even if RICHARD

BARTELT uses a portable device (such as a mobile phone) to access the internet and child pornography, it is more likely than not that evidence of this access will be found in his home, the TARGET PROPERTY, as set forth in Attachment A.

## BACKGROUND ON CHILD PORNOGRAPHY, COMPUTERS, AND THE INTERNET

41.     I have had both training and experience in the investigation of computer-related crimes. Based on my training, experience, and knowledge, I know the following:

a.  Computers and digital technology are the primary way in which individuals interested in child pornography interact with each other. Computers serve four functions in connection with child pornography: production, communication, distribution, and storage.

b.  Digital cameras and smartphones with cameras save photographs or videos as a digital file that can be directly transferred to a computer by connecting the camera or smartphone to the computer, using a cable or via wireless connections such as "Wi-Fi" or "Bluetooth." Photos and videos taken on a digital camera or smartphone may be stored on a removable memory card in the camera or smartphone. These memory cards are often large enough to store thousands of high-resolution photographs or videos.

c.  A device known as a modem allows any computer to connect to another computer using telephone, cable, or wireless connection. Mobile devices such as smartphones and tablet computers may also connect to other computers via wireless connections. Electronic contact can be made to literally millions of computers around the world. Child pornography can therefore be easily, inexpensively and anonymously (through electronic communications) produced, distributed, and received by anyone with access to a computer or smartphone.

d.  The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. Electronic storage media of various types – to include

computer hard drives, external hard drives, CDs, DVDs, and "thumb," "jump," or "flash" drives, which are very small devices, which plug into a port on the computer – can store thousands of images or videos at very high resolution. It is extremely easy for an individual to take a photo or a video with a digital camera or camera-bearing smartphone, upload that photo or video to a computer, and then copy it (or any other files on the computer) to any one of those media storage devices. Individuals can easily store, carry or conceal media storage devices on their persons. Individuals also often carry Smartphones and/or mobile phones.

e.   The Internet affords individuals several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

f.   Individuals also use online resources to retrieve and store child pornography. Some online services allow a user to set up an account with a remote computing service that may provide e-mail services and/or electronic storage of computer files in any variety of formats. A user can set up an online storage account (sometimes referred to as "cloud" storage) from any computer or smartphone with access to the Internet. Even in cases where an individual uses online storage, however, law enforcement can find evidence of child pornography on the user's computer, smartphone or external media in most cases.

g.   As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional (i.e., by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files) or unintentional. Digital information such as the traces of the path of an electronic communication may also be automatically stored in many places (e.g., temporary files or ISP client software, among

others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information exists indefinitely until overwritten by other data.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

42.     I submit that if a computer or storage medium is found on the PREMISES, there is probable cause to believe those records referenced above will be stored on that computer or storage medium, for at least the following reasons:

a.  Based on my knowledge, training, and experience, I know that forensic examiners can recover computer files or remnants of such files months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually delete or disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how an individual has used a computer, what the person used it for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from

operating system or application operation; file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.  Similarly, files that an individual viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

43.  As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the PREMISES because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which the computer created them, although it is possible for a user to later falsify this information.

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when someone accessed or used the computer or storage media. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such

34

file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records sought, a review team cannot always readily review computer evidence or data in order to pass it along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a person used a computer, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f. I know that when an individual uses a computer to obtain or access child pornography, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because someone used it as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain evidence of how RICHARD BARTELT used the computer; sent or received data; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

44. Based upon my training and experience and information relayed to me by agents and others involved in the forensic examination of computers, I know that computer data can be stored on a variety of systems and storage devices, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact disks, magnetic tapes, memory cards, memory chips, and online or offsite storage servers maintained by corporations, including but not limited to "cloud" storage. I also know that during the search of the premises it is not always possible to search computer equipment and storage devices for data for a number of reasons, including the following:

a. Searching computer systems is a highly technical process, which requires specific expertise and specialized equipment. There are so many types of computer hardware and software in use today that it is impossible to bring to the search site all of the technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software, website, or operating system that is being searched;

b. Searching computer systems requires the use of precise, scientific procedures, which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted, or password-protected data. Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted;

c. The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises; and,

d. Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Computer users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is

necessary to decrypt the data into readable form. In addition, computer users can conceal data within another seemingly unrelated and innocuous file in a process called "steganography." For example, by using steganography a computer user can conceal text in an image file which cannot be viewed when the image file is opened. Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is contraband, evidence, fruits, or instrumentalities of a crime.

45. Additionally, based upon my training and experience and information related to me by agents and others involved in the forensic examination of computers, I know that routers, modems, and network equipment used to connect computers to the Internet often provide valuable evidence of, and are instrumentalities of, a crime. This is equally true of wireless routers, which create localized networks that allow individuals to connect to the Internet wirelessly. Though wireless networks may be secured (in that they require an individual to enter an alphanumeric key or password before gaining access to the network) or unsecured (in that an individual may access the wireless network without a key or password). Wireless routers for both secured and unsecured wireless networks may yield significant evidence of, or serve as instrumentalities of, a crime — including, for example, serving as the instrument through which the perpetrator of the Internet-based crime connected to the Internet and, potentially, containing logging information regarding the time and date of a perpetrator's network activity as well as identifying information for the specific device(s) the perpetrator used to access the network. Moreover, I know that individuals who have set up either a secured or unsecured wireless network in their residence are often among the primary users of that wireless network.

## BIOMETRIC UNLOCK

46.      The warrant I am applying for would permit law enforcement to obtain the display of physical biometric characteristics (such as fingerprint, thumbprint, facial, or iris characteristics) to unlock devices subject to search and seizure pursuant to this warrant. I seek this authority based on the following:

47.      I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many electronic devices, particularly newer mobile devices, and laptops, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint scanners and facial recognition features. Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to use.

48.      If a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprints. For example, Apple offers a feature called "Touch ID," which allows a user to register up to five fingerprints that can unlock a device. Once a fingerprint is registered, a user can unlock the device by pressing the relevant finger to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) located at the bottom center of the front of the device. The fingerprint sensors found on devices produced by other manufacturers have different names but operate similarly to Touch ID.

49.      If a device is equipped with a facial recognition feature, a user may enable the ability to unlock the device through his or her face. For example, Apple offers a facial recognition feature called "Face ID." During the Face ID registration process, the user holds the device in front of his or her face. The device's camera then analyzes, and records data based on the user's facial

characteristics. The device can then be unlocked if the camera detects a face with characteristics that match those of the registered face. Facial recognition features found on devices produced by other manufacturers have different names but operate similarly to Face ID.

50.     If a device is equipped with an iris recognition feature, a user may enable the ability to unlock the device through his or her irises. For example, Samsung offers an Iris Scanner, which uses the biometric information of an individual's irises to identify the user.

51.     In my training and experience, users of electronic devices often enable the aforementioned biometric features because they are considered to be a more convenient way to unlock a device than by entering a numeric or alphanumeric passcode or password. Moreover, in some instances, biometric features are considered to be a more secure way to protect a device's contents. This is particularly true when the users of a device are engaged in criminal activities and thus have a heightened concern about securing the contents of a device.

52.     As discussed in this affidavit, based on my training and experience I believe that one or more digital devices will be found during the search. The passcode or password that would unlock the device(s) subject to search under this warrant is not known to law enforcement. Thus, law enforcement personnel may not otherwise be able to access the data contained within the device(s), making the use of biometric features necessary to the execution of the search authorized by this warrant.

53.     I also know from my training and experience, as well as from information found in publicly available materials including those published by device manufacturers, that biometric features will not unlock a device in some circumstances even if such features are enabled. This can occur when a device has been restarted, inactive, or has not been unlocked for a certain period of time. For example, Apple devices cannot be unlocked using Touch ID when (1) more than 48

hours has elapsed since the device was last unlocked or (2) when the device has not been unlocked using a fingerprint for 4 hours and the passcode or password has not been entered within a certain period of time. Biometric features from other brands carry similar restrictions. Thus, in the event law enforcement personnel encounter a locked device equipped with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time.

54.     Due to the foregoing, with respect to any person who is located in the PREMISES during the execution of the search and who is reasonably believed by law enforcement to be a user of a password and/or biometric sensor-enabled device that falls within the scope of this warrant, it is requested that law enforcement personnel may (1) press or swipe the fingers (including thumbs) of the person to the fingerprint scanner of the device found at the premises; or (2) hold the device in front of the person's face to activate the facial and/or iris recognition features, for the purpose of attempting to unlock the device in order to search its contents as authorized by this warrant.

## CONCLUSION

55.     Based on the foregoing, there is probable cause to believe that the federal criminal statutes cited herein have been violated, and that the contraband, property, evidence, fruits and instrumentalities of these offenses, more fully described in Attachment B, are located at the locations described in Attachment A. I respectfully request that this Court issue a search warrant for the locations described in Attachment A, authorizing the seizure and search of the items described in Attachment B.

## ATTACHMENT A

### Property to Be Searched

The property to be searched is **N9563 Friendship Drive, Apt. #9, Kaukauna, WI 54130** (TARGET PROPERTY or PREMISES), to include the mailbox and all associated storage lockers, closets, and/or areas associated with the PREMISES within the curtilage of the TARGET PROPERTY, and a Gray Hyundai Sante Fe vehicle, bearing Wisconsin license plate ASW6609.

The property at **N9563 Friendship Drive, Apt. #9, Kaukauna, WI 54130** is located west of Friendship Drive / State Highway 55 in Kaukauna, Wisconsin. The residence is described as a two-story, multi-unit apartment building with light colored brick and gray siding, and garages located on the South and North side of the building. The entrance to Apt. #9 is on the back side (Southeast corner) of the building, and is labeled with the number nine on the door. The garage entrance to Apt. #9 is located on the south side of the building.

 

**ATTACHMENT B**

**ITEMS TO BE SEIZED:**

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use, or which is or has been used as the means of committing a criminal offense, 18 U.S.C. § 2251(a), (c), and (e) – Sexual exploitation of children, and attempts and conspiracies to sexually exploit children; 18 U.S.C. §§ 2252(a)(1) & (b)(1) and 2252A(a)(1) & (b)(1) – Transportation and attempted transportation of child pornography; 18 U.S.C. §§ 2252(a)(2) & (b)(1) and 2252A(a)(2) & (b)(1) – Distribution and attempted distribution of child pornography; 18 U.S.C. §§ 2252(a)(2) & (b)(1) and 2252A(a)(2) & (b)(1) – Receipt and attempted receipt of child pornography; 18 U.S.C. §§ 2252(a)(4)(B) & (b)(2) and 2252A(a)(5)(B) & (b)(2) – Possession and attempted possession of child pornography; 18 U.S.C. §§ 2252(a)(4)(B) & (b)(2) and 2252A(a)(5)(B) & (b)(2) – Accessing and attempting to access material with the intent to view child pornography; and 18 U.S.C. § 2422(b) – Coercion and enticement and attempted coercion and enticement of a minor:

1.      Computers or storage media used to commit the violations described above.

2.      For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

A.      Evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs,

43

registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

B.      Evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

C.      Evidence of the lack of such malicious software;

D.      Evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to the crime(s) under investigation and to the computer user;

E.      Evidence indicating the computer user's knowledge and/or intent as it relates to the crime(s) under investigation;

F.      Evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

G.      Evidence of programs (and associated data) that are designed to eliminate data from the COMPUTER;

H.      Evidence of the times the COMPUTER was used;

I.      Passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

J.      Documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

K.     Records of or information about Internet Protocol addresses used by the COMPUTER;

L.     Records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered in any Internet search engine, and records of user-typed web addresses; and

M.     Contextual information necessary to understand the evidence described in this attachment.

3.     Routers, modems, and network equipment used to connect computers to the Internet.

4.     Child pornography and child erotica.

5.     Records, information, and items relating to violations of the statutes described above including:

A.     Records, information, and items relating to the occupancy or ownership of the TARGET PROPERTY, including utility and telephone bills, mail envelopes, or addressed correspondence;

B.     Records, information, and  items relating to the ownership or use of computer equipment found in the above residence, including sales receipts, bills for Internet access, and handwritten notes;

C.     Records and information relating to the identity or location of the persons suspected of violating the statutes described above;

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded, including external and internal hard drives, flash drives, thumb drives, micro-SD cards, macro-SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact discs, magnetic tapes, memory cards, memory chips, and other magnetic or optical media.

During the execution of the search of the premises described in Attachment A, law enforcement personnel are authorized to press the fingers (including thumbs) and hold up the device(s) to the face of individuals found at the premises to the Touch ID sensor of Android or Apple brand device(s) and the camera of the Apple brand devices, smartphones, or tablets, such as an iPhone or iPad, found at the premises for the purposes of attempting to unlock the device(s) via Touch ID and  Face ID in order to search the contents as authorized by this warrant.